Franklin Peanut Company v. Commissioner.
Franklin Peanut Co. v. Commissioner
Docket No. 294 P.T.
United States Tax Court
1943 Tax Ct. Memo LEXIS 139; 2 T.C.M. (CCH) 706; T.C.M. (RIA) 44027; August 27, 1943
*139 Respondent's action in disallowing claim for refund of taxes paid for the processing of peanuts approved for failure of proof of error. Cyrus W. Beale, Esq., for the petitioner. Sidney B. Gambill, Esq., and Royal E. Maiden, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion This proceeding involves a claim for refund of taxes paid on the processing of peanuts in the amount of $116,721.29. The claim was disallowed by the respondent and the petitioner brought this proceeding by filing a petition before the United States Processing Tax Board of Review. By section 510 of the Revenue Act of 1942 the Board of Review established under section 906(b) of the Revenue Act of 1936 was abolished and the jurisdiction theretofore vested in it was transferred to and vested in the Tax Court of the United States. The instant proceeding was pending before the Board of Review on December 31, 1942, the date of the effectiveness of the above provision of the Revenue Act. The question for determination is whether the petitioner bore the burden of any part of the processing taxes paid by it under the Agriculture Adjustment Act and, if so, to what extent. Findings of Fact
*140 During the tax period involved herein petitioner was a partnership, composed of R. I. Beale, J. C. Beale, J. I. Beale, Jr., and Cyrus W. Beale, and with its principal place of business at Franklin, Virginia. The business had been in existence since about 1904 and was that of cleaning, grading, and shelling peanuts, and of selling processed peanuts to wholesalers and jobbers of peanuts throughout the United States. Petitioner was a processor within the intent and meaning of the Agricultural Adjustment Act during the period from October 1, 1934 to April 30, 1935, inclusive, and during that period paid tax on the processing of peanuts in the total amount of $116,721.29. A timely claim for the refund of the $116,721.29 paid as tax on the processing of peanuts was filed, and a notice of disallowance in whole of this claim was sent to the petitioner by registered mail on April 22, 1940. A petition for the review of said disallowance was filed on July 20, 1940. During the tax period and during the statutory period before and after the tax petitioner purchased principally Virginia type bunch peanuts, but small quantities of Spanish type peanuts were also handled. Some of the peanuts were *141 sold cleaned but not shelled, graded as "Jumbos," "Fancies," and "Extras." Shelled peanuts were sold graded as "Extra Large," "Virgina No. 1," "Virginia No. 2," "Spanish No. 1," and "Spanish No. 2." Some peanuts were also sold as oil stock. For this tax period petitioner's sale, exclusive of oil stock, according to grades of peanuts were as follows: Average
sale
price per
Pounds
Amount
pound
Peanuts Cleaned
but Not Shelled: *
Jumbos
814,585
$ 56,296.44
$.0691
Fancies
1,114,366
69,199.97
.0621
Extras
790,897
44,150.70
.0558
Shelled Peanuts: Extra Large
1,887,346
176,620.14
.0936
Virginia No. 1
3,442.292
278,706.90
.0810
Virginia No. 2
1,277,756
89,926.33
.0704
Spanish
170,436
13,374.65
.0785
Totals
9,497.678
$728,275.13
The total number of pounds of peanuts processed during the tax period (farmers' stock weight) was 11,672,129. The total cost of these peanuts was $522,177.88, and the total gross sales value of the processed peanuts was $734,815.30. The average margin per pound of peanuts processed during the tax period was $.0082175. The total number of pounds of peanuts processed during the period before and after the *142 tax (farmers' stock weight) was 52,548,423 pounds. The total cost of these peanuts was $1,425,681.14, and the total gross value of the processed peanuts was $1,744,947.58. The average margin per pound of peanuts processed during the period before and after the tax was $.0060757. The average margin for the tax period was higher than the average margin for the period before and after the tax by $.0021418 per pound; therefore the presumption under section 907(a) of the Revenue Act of 1936 is that none of the burden of the processing tax paid by petitioner was borne by it but the entire burden of the tax was shifted to others. Petitioner reported a net income in its Federal "Partnership Return of Income" for each of the calendar years indicated, as follows: Year
Net Income
1919
$55,227.65
1920
44,966.30
1921
7,061.42
1922
20,981.70
1923
14,561.49
1924
37,413.72
1925
19,939.84
1926
55,179.69
1927
55,582.08
1928
28,287.49
1929
18,948.48
1930
27,042.63
1931 (Copy of return for 1931
not submitted in evidence)
1932
6,615.00
1933
22,319.33
1934
27,626.81
1935
40,750.53
1936
20,681.60
The net income reported for the year 1934 in the amount of $27,626.81 was after *143 a deduction of $48,186.30 for processing tax paid with respect to the processing of peanuts within that year. The net income reported for the years 1935 and 1936 was revised by a revenue agent of the United States Bureau of Internal Revenue to $119,770.72 and $23,211.85, respectively, and these findings of the revenue agent were accepted as correct by petitioner's president and general manager, who was also a partner. The revised net income for 1935 of $119,770.72 was after a deduction of $68,534.99 for processing tax paid with respect to the processing of peanuts within that year. Typical invoices indicate that on the effective date of the processing tax petitioner increased the sales prices of its peanuts by an amount substantially equal to the amount of the processing tax, and that immediately after January 6, 1936, when the Supreme Court of the United States held the taxing provisions of the Agricultural Adjustment Act to be unconstitutional, petitioner reduced the sales prices of its peanuts by an amount substantially equal to the amount of the processing tax. Petitioner in its accounting treated the processing tax as an item of cost, the same as the cost of peanuts, the cost *144 of production, etc., and fully recovered the processing tax in the same manner that it recovered all other items of cost. At least 50 per cent of petitioner's sales of peanuts were made through brokers. With respect to each such sale petitioner deducted the amount of the processing tax applicable thereto from the gross invoice price before computing the broker's commission. These reductions in the commissions were made for the reason that the brokers had agreed to help petitioner bear the processing tax to that extent. Beginning some time about February 1935, it became the practice of petitioner to stamp upon contracts entered into between it and its customers for the sale of peanuts the following language: The present Processing Tax as levied by the United States Government is included in the price shown on this order, but any increase in this tax, or any other tax that may be levied by either the Federal or State Government that increases the cost of goods on this order shall be for account of buyer, and added to price herein stated. Prior to the use of a stamp it had been the practice of petitioner to type similar provisions upon its contracts of sale of peanuts with respect *145 to the processing of which a tax had been paid, and on many of its invoices statements as follows, or to the same effect, were either typed or stamped: The processing tax has been included in the price on this shipment. * * * * *
The present processing tax as levied by the United States Government is included in the price shown on this invoice. Otherwise, petitioner represented to its customers by telephone and by letters that the prices paid by them for peanuts included the processing tax, the following typical reply having been made to a customer who inquired relative to the inclusion of the processing tax in the invoice prices of peanuts shipped to the customer during the tax period: We do not see where it is necessary for us to put the certificate as outlined in your letter on each invoice covering peanuts we ship you. The peanuts we are shipping includes the Processing Tax of 1 1/2" ib. on shelled peanuts and 1.05" ib. on peanuts in the shell. We pay 1" ib. tax on farmers' stock when we use them and the conversion figures are as mentioned above. When the tax on peanuts we use is due we pay same. The evidence does not establish that petitioner bore the burden of any part *146 of the processing tax paid by it during the period October 1, 1934 to April 30, 1933, inclusive. Opinion VAN FOSSAN, Judge: The last stated finding of fact is dispositive of the instant case. The burden rested on petitioner to overcome the presumptive correctness of respondent's determination. This it has not done. A careful study of the record in the case brings us to the conviction that petitioner has not established that it bore the burden of any part of the processing taxes paid by it during the period in question. On the evidence before us no refund of such taxes is justified. Decision will be entered for the respondent.